UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x          NOT FOR PUBLICATION

In Re:                                                            Chapter 7

GEORGE A. GAMALDI and                                             Case No. 807-71366-reg
SUSANNA GAMALDI,

          Debtors.

-------------------------------------------------------x
ANDREW THALER, Trustee.
Estate of GEORGE A. GAMALDI and
SUSANNA A. GAMALDI,                                               Adv. Pro. No. 807-8322-reg

             Plaintiff,
-against-

RITA C. GAMALDI,
             Defendant.
-------------------------------------------------------x
ANDREW THALER, trustee.
Estate of GEORGE A. GAMALDI and
SUSANNA A. GAMALDI,                                               Adv. Pro. No. 808-8104-reg

             Plaintiff,
-against-

GEORGE GAMALDI, SR. And
RITA C. GAMALDI,
             Defendants.
-------------------------------------------------------x

## MEMORANDUM DECISION

      Before the Court are cross-motions for summary judgment filed by the plaintiff and the

defendants in both related adversary proceedings.  The plaintiff in both  proceedings is Andrew

Thaler (the "Plaintiff" or the "Trustee"), the Chapter 7 Trustee for the estate of George A.

Gamaldi ("George Gamaldi") and Susanna A. Gamaldi ("Susanna Gamaldi") (collectively, the

"Debtors").  The defendant in adversary proceeding no. 07-8322 is Rita Gamaldi, the stepmother of George Gamaldi and the stepmother-in-law of Susanna Gamaldi as of the date the Debtors' petition was filed.  The defendants in adversary proceeding no. 08-8104 are Rita Gamaldi and George Gamaldi Sr., who is the father of George Gamaldi and was the father-in-law of Susanna Gamaldi as of the date the Debtors' petition was filed.  The claims in adversary proceeding no. 07-8322 (the "First Adversary Proceeding") relate to Susanna Gamaldi's prepetition transfer of her interest in proceeds derived from the sale of property jointly owned by the Debtors to Rita Gamaldi.  The transfer in question was made pursuant to a stipulation of settlement signed by the Debtors which appears to be in connection with a matrimonial proceeding. There is no evidence in the record that the stipulation of settlement was either filed with the state court in connection with a matrimonial proceeding or that the stipulation of settlement was incorporated into a divorce decree or judgment so-ordered by a state court.

Each party seeks summary judgment on all claims asserted by the Trustee to recover the transfer under various provisions of the New York Debtor and Creditor Law ("DCL") as an actual fraudulent conveyance or a constructive fraudulent conveyance, under 11 U.S.C. § 548, and as a preference under 11 U.S.C. § 547. The Court reserved decision on the following issues: 1) whether Susanna Gamaldi's interest in property jointly held with George Gamaldi, which was sold pursuant to the stipulation of settlement, was encumbered by a mortgage given by George Gamaldi to Rita Gamaldi; 2) whether Susanna Gamaldi received fair consideration for the transfer of her interest in the proceeds from the sale of the property; and 3) whether Rita Gamaldi is as a matter of law an insider of Susanna Gamaldi.

For the reasons set forth below, the Court finds that: 1) Susanna Gamaldi's interest in the

property was not encumbered by the mortgage granted by George Gamaldi to Rita Gamaldi and George Gamaldi Sr.; 2) the consideration received by Susanna Gamaldi as set forth in the stipulation of settlement does not as a matter of law constitute fair consideration or reasonably equivalent value, and an evidentiary hearing is required to determine whether she did receive fair consideration or reasonably equivalent value; and 3) Rita Gamaldi was an insider of Susanna Gamaldi for the purposes of both adversary proceedings.

### *Procedural History*

On April 20, 2007, the Debtors filed a joint petition for voluntary relief under Chapter 7 of the Bankruptcy Code (the "Petition Date").  Andrew Thaler, Esq. was appointed as the Chapter 7 Trustee.  On October 31, 2007, the Trustee commenced the First Adversary Proceeding.   On November 26, 2007, Rita Gamaldi filed a motion to dismiss the First Adversary Proceeding, which was opposed by the Trustee.  At a hearing held on May 20, 2008, the motion to dismiss was denied.

On June 9, 2008, the Trustee commenced the Second Adversary Proceeding against Rita Gamaldi and George Gamaldi Sr.  On December 12, 2008, the Trustee and the Defendant each moved for summary judgment in the First Adversary Proceeding and the Second Adversary Proceeding as to all causes of action. On January 16, 2009, the defendants in the First Adversary Proceeding and the Second Adversary Proceeding filed opposition to the Trustee's motions for summary judgment. At the hearing held on January 21, 2009, the Court denied the motions for summary judgment with respect to the Second Adversary Proceeding.  The Court found among other things that the existence of disputed issues of fact regarding whether fair consideration was given in exchange for the granting of the Second Mortgage precluded summary judgment.  The

Court also denied both motions in each adversary proceeding with respect to claims asserted

under Bankruptcy Code § 548(a)(1)(A) and § 276 and 276-a of the DCL, as liability under these

intentional fraudulent conveyance statutes required an evidentiary hearing to determine the intent

of the transferors. The Court marked for submission the limited issues set forth on the record at

the hearing held on January 21, 2009.

### *Facts*

Except where noted, the following facts are not in dispute.  The Debtors, who were

married, had two children who were emancipated as of March 26, 2007.  Prior to the date of the

transfers which are the subject of the First Adversary Proceeding, the Debtors jointly owned a

company named South Shore Provisions, Inc., which owned a Boar's Head distributorship route.

The Debtors jointly managed the operations of South Shore Provisions, Inc.  Prior to the Petition

Date, Rita Gamaldi issued the following checks dated on the following dates from her personal

bank account to George Gamaldi or South Shore Provisions, Inc.:

> 4/22/99 - check no. 0174, in amount of $20,000.00, payable to George Gamaldi
> (Plaintiff's Ex. L);
>
> 5/7/02 - check no. 0228, in amount of $10,000.00, payable to South Shore Provisions,
> Inc. (Plaintiff's Ex. M); and
>
> 1/28/04 - check no. 0264, in amount of $20,000.00, payable to South Shore
> Provisions, Inc. (Plaintiff's Ex. N).

 On February 8, 2004, George Gamaldi individually executed a promissory note in favor of Rita

Gamaldi in the amount of $90,000.00 (the "February 2004 Note").  Susanna Gamaldi was not a

signatory on the February 2004 Note.  On February 8, 2004, George Gamaldi executed a second

promissory note in favor of George Gamaldi Sr., in the amount of $90,000.00 (the "Second

February 2004 Note").  On November 21, 2005, the Debtors executed a promissory note in favor

of George Gamaldi Sr. in the sum of $80,858.75 (the "November 2005 Note").

On February 16, 2006, George Gamaldi granted George Gamaldi Sr. and Rita Gamaldi a mortgage in the original principal amount of $257,858.75 (the "Second Mortgage") on the Debtors' residence located in East Patchogue, New York (the "Property"), which was owned by the Debtors as tenants by the entirety. (Plaintiff's Ex. P). The dollar amount of the Second Mortgage does not correspond with the combined dollar amount of the February 2004 Note, the Second February 2004 Note and the November 2005 Note. At the time the Second Mortgage was granted, the Property was encumbered by a first mortgage held by American Servicing Co.[1] Susanna Gamaldi was not a party to and did not sign the Second Mortgage.  The Second Mortgage was recorded in the office of the Suffolk County Clerk on April 11, 2006.

According to Rita and George Gamaldi Sr. they received the notes and mortgage in question to satisfy the Debtors' obligations for direct monetary advances they had made to the Debtors and for personal and business expenses which were paid by Rita Gamaldi and George Gamaldi Sr.on behalf of the Debtors.  The parties dispute the amount of money transferred by George Gamaldi Sr. to or for the benefit of George Gamaldi, Susanna Gamaldi or South Shore Provisions, Inc.

The Debtors experienced marital difficulties and agreed to sell the Property, divide the proceeds in some fashion and commence divorce proceedings.  They entered into a contract of sale for the Property to a third party for the purchase price of $575,000.00.  On March 26, 2007, the Debtors entered into a Stipulation Agreement (the "Stipulation") for the stated purpose of

---

[1]America Servicing Co. is also referred to as America's Servicing Co. in Rita Gamaldi's pleadings.

providing for an equitable distribution of the marital assets.  (Plaintiff's Ex. D). The Stipulation

bears the caption "Susanna A. Gamaldi v. George A. Gamaldi, Jr." and the copy provided to this

Court is not so-ordered. The Stipulation states that the above-captioned action is pending in New

York State Supreme Court, and that the terms of the Stipulation settle that action and dispose of

the parties' property rights and their rights to equitable distribution of the marital property.

However, there is nothing in the record before this Court that indicates the Stipulation was filed

in any state court proceeding.

According to the recitations contained in the Stipulation, each party

was represented by separate counsel in connection with the drafting of the Stipulation.  The

Stipulation further provides that it is intended to constitute an agreement pursuant to section

236(B) of the New York Domestic Relations Law.[2]  Pursuant to the Stipulation, the parties

acknowledge that it represents a "fair and equitable distribution of each of their property rights

arising from the joint legal title to certain property or from the marital relationship and further

acknowledge and agree that the said division of property provided for in this Agreement

represents an agreeable division of said property rights."

Contained in the Stipulation is a waiver by both George Gamaldi and Susanna Gamaldi

of  any rights they each had for maintenance, distribution of marital property, or distributive

awards.  Each spouse also waived any rights they each had in each other's pensions or retirement

benefits.  According to the Stipulation, both parties chose not to evaluate their respective

---

[2]Section 236(B) of the Domestic Relations law governs maintenance and distributive awards. Subsection(B)(3) provides: " Agreement of the parties. An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded." N.Y. Dom. Rel. Law § 236(B) (McKinney's).

retirement and pension benefits.  Susanna Gamaldi's pension benefits, if any, arose from her employment by the County of Suffolk, where she had been employed for about two years. George Gamaldi's retirement and pension benefits had been accruing for approximately four to five months.  The Stipulation does not, however, expressly or implicitly, state that George Gamaldi is waiving his rights to Susanna Gamaldi's pension and retirement benefits or any other marital asset specifically in exchange for Susanna's agreement to transfer $45,000.00 to Rita Gamaldi. The Stipulation also provides that it shall not be merged into any divorce decree but shall survive and be binding upon the Debtors.  The signatures of George and Susanna Gamaldi were notarized.

Pursuant to the Stipulation, Susanna Gamaldi acknowledged the following:

1) the Debtors jointly owned South Shore Provisions, Inc.

2) In connection with South Shore Provisions, Inc., the following notes were executed:

a) George Gamaldi had executed the February 2004 Note and the Second February 2004 Note; and

b) George Gamaldi and Susanna Gamaldi had executed the November 2005 Note.

3) The three notes listed above had formed the "basis" of the Second Mortgage.

4) "The parties acknowledge that [the February 2004 Note] held by . . . Rita Gamaldi, is being paid off from the proceeds of sale of [the Property]".

5) George Gamaldi Sr. was to receive one-third of the remaining net proceeds from the sale of the Property towards the payment of the promissory notes issued to him.

6) Upon execution of the Stipulation, the Debtors were to assign a promissory note payable to South Shore Provisions, Inc. in the original sum of $150,000.00 from Thomas Lombardi, who

purchased the business, to George Gamaldi Sr.

7) Upon the payment of the funds as set forth above and the assignment of the promissory note to George Gamaldi, Sr., George Gamaldi, Sr. and Rita Gamaldi were to execute a satisfaction of the Second Mortgage for recording.  However, George Gamaldi agreed to be held liable for any deficiency owed to George Gamaldi Sr. and Rita Gamaldi "should they seek at any future time to collect same."

The Property was sold at a closing held on March 26, 2007.   Rita Gamaldi received $90,000 ("$90,000 Transfer") in satisfaction of the February 2004 Note. Of the remaining net sale proceeds, George Gamaldi Sr. received $3,748.66, Susanna Gamaldi received $2,999.11 and George Gamaldi received $2,999.10. Within one month of the closing of the sale of the Property, the Debtors jointly filed the petition for relief under Chapter 7 of the Bankruptcy Code.

### Issues Presented

Pursuant to the First Adversary Proceeding, the Trustee seeks to recover the $90,000 Transfer under §§ 273, 275 and 276 of the DCL and under Bankruptcy Code § 548(a)(1)(A) and (B).  The Trustee also seeks to recover the $90,000 Transfer as a preference and seeks recovery of the Trustee's legal fees and costs under § 276-a of the DCL. At the time the First Adversary Proceeding was filed, the Trustee had no knowledge of the Second Mortgage, the Second February 2004 Note or the November 2005 Note.  Upon discovery of these documents, the Trustee commenced the Second Adversary Proceeding, seeking to avoid the Second Mortgage and recover the sums paid to Rita Gamaldi and George Gamaldi Sr. from George Gamaldi's share of the proceeds generated from the sale of the Property under §§ 273, 275 and 276 of the DCL, and under Bankruptcy Code § 548(a)(1)(A) and (B).  The Trustee also seeks to recover these

sums as preferences and seeks recovery of the Trustee's legal fees and costs under § 276-a of the DCL. At the hearing on the motions for summary judgment, the Court marked for submission the following legal issues:

1) whether the Second Mortgage encumbered Susanna Gamaldi's interest in the Property;

2) whether Susanna Gamaldi's agreement to transfer her share of the sale proceeds to Rita Gamaldi pursuant to the Stipulation was made for fair consideration; and

3) whether, as a matter of law, Rita Gamaldi was an insider of Susanna Gamaldi at the time the Stipulation was entered into on March 26, 2007.

According to Rita Gamaldi, the Second Mortgage encumbered Susanna Gamaldi's interest in the Property and constituted a valid lien against the Property in its entirety, not just against George Gamaldi's interest in the Property. If this is true, then Rita Gamaldi would have received a transfer from Susanna Gamaldi at the time the Second Mortgage was granted, and the question of whether the transfer of the $45,000.00 was made for fair consideration would be the wrong question. Rather, the question would be whether Susanna Gamaldi receive fair consideration for the granting of the Second Mortgage. If the terms of the Stipulation conclusively establish that fair consideration was received by Susanna Gamaldi in exchange for her agreement to pay her share of the proceeds from the sale of the Property to Rita Gamaldi, then all of the claims asserted by the Trustee against Rita Gamaldi in the First Adversary Proceeding under constructive fraud should be dismissed as a matter of law, because fair consideration or reasonably equivalent value is a component of each of these claims. The issue of whether Rita Gamaldi is an insider of Susanna Gamaldi has been raised by the Trustee and Rita Gamaldi, but it is unclear whether Rita Gamaldi's status as an insider of Susanna Gamaldi is relevant to the claims or defenses asserted in

either adversary proceeding.  Nonetheless, the Court will rule on this issue.

***Legal Analysis***

1.  Standard for Summary Judgment

Summary Judgment is appropriate only if "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "A fact is material when it might affect the outcome of the suit under governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could have returned a verdict for the non-moving party." *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 202 (2d Cir. 2007). In reviewing the record, the court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Id*.  The court is not to weigh the evidence and determine the truth of the matter but to determine whether a genuine issue exists for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). When considering cross-motions for summary judgment, the Court is charged with evaluating the merits of each motion without regard to the other motion. *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993).

Although the burden of demonstrating that no material fact exists lies with the moving party, "unless the nonmoving party offers some hard evidence showing that its version of the events is not wholly fanciful, summary judgment is granted to the moving party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d at 202.  When considering each motion, all reasonable inferences are to be drawn against the party moving for summary judgment.  *Coach, Inc. v. Peters,* 386 F. Supp.2d 495, 497 (S.D.N.Y. 2005).


2. Standards for Avoidance Under Bankruptcy Code Sections 544(b), 547 and 548

Pursuant to Bankruptcy Code § 544(b), the Trustee may avoid "any transfer of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim."  11 U.S.C. § 544(b)(1).  The relevant applicable law under which the Trustee is seeking relief includes DCL §§ 273 and 275, which are part of the constructive fraudulent conveyance statutes.  A transfer is deemed constructively fraudulent where the transfer is made without fair consideration as defined in § 272 of the DCL and where the transferor will be rendered insolvent (DCL § 273) or the transferor intends or believes that he or she will incur debts beyond his or her ability to pay them as they mature (DCL § 275).  Generally, the burden is on the plaintiff to prove lack of fair consideration.  *In re Zerbo,* 397 B.R. 642, 649 (Bankr. E.D.N.Y. 2008) (citing *United States v. McCombs,* 30 F.3d 310, 324 (2d Cir. 1994)).  However, in the case of intra-family transfers, the burden of proof shifts to the transferee to prove fair consideration if 1) there is no evidence of tangible consideration or 2) the transfer was made in a clandestine fashion in order to conceal the value of the consideration.  *United States v. McCombs,* 30 F.3d at 325.

"Fair consideration" is defined in DCL § 272 as:

      a.  When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
      b.  When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

DCL § 272 (McKinney's 2008).

Bankruptcy Code § 547(b) governs the avoidance of preferential payments and provides:

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property -
      (1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made -

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if -

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) the creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Bankruptcy Code § 548(a)(1)(B) permits a trustee to avoid conveyances made within two years of the petition date under certain circumstances and provides:

(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

    (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

    (ii)

        (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

        (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

        (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

        (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

3. <u>Whether the Second Mortgage Encumbered Susanna Gamaldi's Interest in the Property</u>

Rita Gamaldi asserts that based on the undisputed facts of this case and applicable case law, the Second Mortgage, which was not executed by Susanna Gamaldi, nevertheless encumbered her interest in the Property. According to Rita Gamaldi the Second Mortgage constitutes a valid lien against the Property as a whole, not just George Gamaldi's interest therein. The Trustee asserts that under the facts of this case the Second Mortgage does not encumber Susanna Gamaldi's interest in the Property. Therefore the First Note and Second Mortgage cannot form the basis of an obligation owed by Susanna Gamaldi. The Court will not at this point address the validity of the Second Mortgage, which will be considered at the trial on the Second Adversary Proceeding. For the purpose of the subject motions the Court will restrict its analysis to whether, if valid, the Second Mortgage encumbers Susanna Gamaldi's interest in the Property.

Rita Gamaldi does not appear to dispute that George Gamaldi's granting of the Second Mortgage to Rita Gamaldi and George Gamaldi Sr., did not encumber Susanna Gamaldi's interest in the Property. *V.R.W., Inc. v. Klein,* 68 N.Y.2d 560, 564, 503 N.E.2d 496, 510 N.Y.S.2d 848 (N.Y. 1986) (citing *Hiles v. Fisher,* 144 N.Y. 306, 39 N.E.337 (N.Y. 1895) and *Lawriw v. City of Rochester,* 14 A.D.2d 13, 217 N.Y.S.2d 113 (N.Y. A.D. 1961), *aff'd* 11 N.Y.2d 759, 181 N.E.2d 631, 226 N.Y.S.2d 695 (N.Y. 1962)). However, Rita Gamaldi does argue that under the theory of ratification, Susanna Gamaldi's agreement to transfer to Rita Gamaldi the proceeds of the sale of the Property as set forth in the Stipulation is sufficient as a matter of law to retroactively extend the Second Mortgage to encumber Susanna Gamaldis interest in the property, effective as of the date the mortgage was first recorded. This argument fails as a matter of law.

"Ratification" is defined in <u>Black's Law Dictionary</u>, 4th Ed. as follows:

The affirmance by a person of a prior act which did not bind him, but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if

originally done by him.  The adoption by one, as binding upon himself, of an act done in such relation that he may claim it as done for his benefit, although done under such circumstances as would not bind him except for his subsequent assent.  It is equivalent to a previous authorization and relates back to time when act ratified was done, except where intervening rights of third persons are concerned.

Ratification requires some action by the party which permits a court to draw the conclusion that the party adopts the prior act in question.  For example, in *De Tata v. Tress,* 4 A.D.2d 748, 145 N.E.2d 877, 164 N.Y.S.2d 762 (N.Y. 1957), the court found that a wife, who owned real property with her husband, ratified a deed containing her forged signature, which deed purported to transfer her interest in the property to her husband.  The court also found that the wife ratified a second mortgage obtained by the husband so as to encumber the entire parcel of property.  In that case, the ratification was clear: the wife signed a statement after the signature on the deed was forged and the mortgage was obtained wherein she specifically agreed that she gave her husband a quitclaim deed and was in "full agreement and fully aware of a second mortgage" placed on the property.  The statement was notarized as well.  The court noted that silence alone would not constitute ratification, but the acts taken by the wife ratified the transaction despite the fact that her signature was forged on the deed.  The court in *Crispino v. Greenpoint Morg. Corp.,* 304 A.D.2d 608, 758 N.Y.S.2d 367 (N.Y.A.D. 2003), held that ratification of a wife's forged signature on a deed transferring her interest in property to her husband did not occur where there was no evidence that she either consented to the use of the signature or that she actively participated in the negotiations with the mortgage company thereafter which was purportedly granted a mortgage on the entire property by the husband.

In the case before this Court, there was no signature for Susanna Gamaldi to ratify. The Second Mortgage does not contain her signature.  There was no act taken by George Gamaldi on

behalf of Susanna Gamaldi in connection with the granting of the Second Mortgage which can be attributed to her under the theory of ratification. The Second Mortgage only binds George Gamaldi.  In addition, there is nothing in the Stipulation which serves to ratify or adopt George Gamaldi's actions in granting the Second Mortgage as her own.  The Stipulation merely recites that the Second Mortgage was recorded against the Property and that Rita Gamaldi is receiving $90,000.00 as repayment of the February 2004 Note.  This language cannot be read to "extend" the lien of the Second Mortgage to Susanna Gamaldi's interest in the Property.  In addition, although the Stipulation does contain language that the notes were executed "in connection with" the business jointly owned by the Debtors, this does not constitute a ratification of the mortgage granted by George Gamaldi. At most, this language indicates that Susanna Gamaldi may have received a benefit from the loans made by Rita Gamaldi and/or George Gamaldi Sr. pursuant to the notes.  The fact that the Stipulation recites that the three notes formed the basis for the Second Mortgage does not serve as ratification or acknowledgment by Susanna Gamaldi that the Second Mortgage encumbered her interest in the Property.

4.  <u>Whether the Separation Agreement Conclusively Establishes that Susanna Received Fair Consideration in Exchange for the Transfer to Rita Gamaldi</u>

Rita Gamaldi asserts that the terms of the Stipulation establish as a matter of law that Susanna Gamaldi received fair consideration in exchange for transferring to Rita Gamaldi $45,000.00 which represents Susanna Gamaldi's share of the proceeds from the sale of the property. Because Susanna Gamaldi and George Gamaldi each had a one-half interest in the $90,000 net proceeds, the Trustee's recovery in the First Adversary Proceeding is limited to Susanna's share which is $45,000.00. However, the Court does not find that as a matter of law Susanna Gamaldi received fair consideration for the $45,000.00 transfer. Rita Gamaldi's

argument is based on the premise that the transfer by Susanna Gamaldi to Rita Gamaldi was made for the benefit of George Gamaldi. The transfer for George Gamaldi's benefit was made pursuant to the Stipulation, and according to Rita Gamaldi, George Gamaldi's waiver of any rights he had to Susanna Gamaldi's pension constitutes fair consideration for the $45,000.00 transfer.

To the extent that Susanna's transfer of the $45,000.00 to Rita Gamaldi constitutes a transfer for the benefit of George Gamaldi, it is appropriate to determine whether there was fair consideration between the spouses for this transfer. Rita Gamaldi asserts that because the Stipulation is a binding contract which equitably divided the marital property, "fair consideration" is either presumed under the law or that the waiver of the pension rights, without regard to their value, constitutes fair consideration. At the hearing on the motion and cross-motion for summary judgment, counsel to Rita Gamaldi argued that any consideration, no matter how minimal, is sufficient to support a finding of fair consideration for the transfer of $45,000.00 by Susanna Gamaldi to Rita Gamaldi because the transfer occurred pursuant to a valid separation agreement.

The resolution of this legal issue turns on an understanding of the preclusive effect, if any, the Stipulation has regarding the adequacy of consideration tendered by George Gamaldi in exchange for his receipt of the benefit of the $45,000.00 otherwise belonging to Susanna Gamaldi.

Fair consideration requires a finding that the recipient (George Gamaldi as the recipient of the benefit of the transfer) conveyed property in exchange, or discharged an antecedent debt in exchange, such exchange was a "fair equivalent" of the property received, and the exchange was made in good faith. *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058-59 (2d Cir. 1995). The Stipulation recites that the division of the marital property, which would include the $45,000.00

transfer, represents an equitable distribution of the Debtors' property rights arising from their joint legal title to property or the marital relationship. The validity of the Stipulation insofar as it represents an agreement between the parties is not questioned.  What is at issue is whether the Stipulation establishes fair consideration for the $45,000.00 transfer.

Rita Gamaldi relies on *In re Chester A. Ciancarelli (Allan B. Mendelsohn, Chapter 7 Trustee of the Estate of Chester A. Ciancarelli v. Patricia Ciancarelli),* Civ. No. 96-3931 (Dec. 16, 1997), an unpublished decision by Hon. Joanna Seybert of the United State Court for the Eastern District of New York for the proposition that any consideration recited in an agreement which equitably distributes marital property is deemed fair consideration for the transfers between spouses. The *Ciancarelli* decision was rendered in an adversary proceeding filed by the Chapter 7 trustee seeking to avoid the conveyance of fifty percent of the sale proceeds of the marital home owned by the debtor Chester Ciancarelli and non-debtor Patricia Ciancarelli to Patricia Ciancarelli.  The Trustee sought to avoid the conveyance under § § 276, 273 and 275 of the DCL.

According to the facts as recited in the decision, Patricia Ciancarelli and Chester Ciancarelli had been married for approximately forty years before Patricia Ciancarelli filed an action for spousal support prepetition.  On June 1, 1993, the parties entered into a stipulation to resolve their marital disputes.  Under the terms of the stipulation, which was not a separation agreement, the parties agreed to sell the property and Mrs. Ciancarelli would receive Mr. Ciancarelli's share of the proceeds. These funds would be placed in escrow until the execution of a separation agreement.  The property was sold on August 12, 1993, and during the pendency of the spousal support action, on March 20, 1993, the debtor sued his wife for divorce ("Divorce Proceeding"). In February, 1994, the parties entered into a separation agreement which was filed

in the Divorce Proceeding.  Pursuant to the earlier executed stipulation, the debtor transferred his interest in the sale proceeds to his wife.

On August 24, 1994, the debtor in that case filed a Chapter 7 petition.  The parties obtained a judgment of divorce after the petition was filed.  Judge Cyganowski dismissed the trustee's action against Mrs. Ciancarelli, and the trustee appealed.  On appeal, Judge Seybert affirmed Judge Cyganowski's ruling in a lengthy decision.  Judge Seybert held that the stipulation which provided for the transfer of the sale proceeds to Mrs. Ciancarelli could be "collapsed" into the separation agreement, which provided among other things that Mrs. Ciancarelli waived her right to her husband's pension.  Judge Seybert held that in looking at the entire transaction, Mr. Ciancarelli owed an antecedent debt to Mrs. Ciancarelli which supplied the "fair consideration" for the transfer.  The stipulation clearly provided that the proceeds of the marital home would be subject to equitable distribution in the pending divorce proceeding, and in the separation agreement, Mrs. Ciancarelli agreed to give up her rights to her ex-husband's pension and retirement benefits.  Although Judge Seybert does not comment on the value of the consideration, there is no finding that the consideration given by Mrs. Ciancarelli in the form of waiver of her accrued rights to the pension or retirement benefits was of minimal or inconsequential value.  It was Mrs. Ciancarelli's agreement under the separation agreement to give up her right to the debtor's pension and retirement benefits, in exchange for the monies in escrow, which constituted consideration for the transfer of the funds.

The case before this Court presents a very different set of facts.  While Rita Gamaldi argues that the consideration at issue in this case is the same (the waiver of a right to pension and retirement benefits by the transferee), it is not clear whether the pension rights and retirement

benefits in our case even exist.  According to the Stipulation, no value was placed on the pension

rights, and the only information in the record regarding the pension rights waived by George

Gamaldi is that Susanna Gamaldi had been employed by Suffolk County for approximately two

years.  It is not even clear if her pension rights vested as of the date of the Stipulation.  Unless the

pension rights have vested, they do not become property of the marital estate.  *See Majauskas v.*

*Majauskas,* 61 N.Y.2d 481, 490, 474 N.Y.S.2d 699, 704, 463 N.E.2d 15, 20 (N.Y. 1984)

(husband's pension rights include rights earned and vested after marriage and before

commencement of the matrimonial action).

　　　　To the extent Rita Gamaldi relies on the Second Circuit Court of Appeals decision

*Federal Deposit Ins. Co. v. Malin,* 802 F.2d 12 (2d Cir. 1986) for the proposition that fair

consideration is presumed for transfers between parties pursuant to a valid separation agreement,

the Court disagrees.  While the Second Circuit did hold that a matrimonial separation agreement

serves to relinquish rights and remedies otherwise conferred by law, the court examined the

separation agreement to determine whether the separation agreement included exchanges

representing fair consideration.  There was no blanket assumption by the court that regardless of

the terms of the separation agreement, any transfers made between spouses pursuant to its terms

are immunized from scrutiny in a fraudulent conveyance action.  The court examined whether the

wife who received a transfer of her husband's interest in the home they had purchased together

gave fair consideration for the transfer, and concluded that the husband had antecedent liabilities

for child maintenance and support as well as marital support obligations.  *Id..,* 802 F.2d at 19.  In

our case, there is nothing in the Stipulation regarding continuing support or maintenance

obligations by either party.  In fact, the Stipulation recites that each party requires no maintenance

from the other, and waives any claim for maintenance.

In addition, neither party in this case has presented a divorce decree or judgment incorporating the terms of the Stipulation, nor is there any evidence that the Stipulation was filed in the Debtors' marital proceeding.  Where a transfer has not been so incorporated into a divorce decree, the Court will need to determine the value of the claims waived by George Gamaldi under the Stipulation.  *See Darling v. Darling,* 22 Misc.3d 343, 869 N.Y.S.2d 307, 320 (N.Y. Sup. 2008) ("Where the transfer has not been incorporated into a divorce decree, more will be required about the financial circumstances of the parties, the value of the transferor's share in the property transferred, and the nature and amount of the potential claims waived by the transferee."). Without having evidence of state court approval of the division of marital assets set forth in the Stipulation, the Court cannot find that fair value in exchange for the transfer to Rita Gamaldi has been established as a matter of law.

A hearing on whether the waiver by George Gamaldi of Susanna Gamaldi's pension rights constituted fair consideration for the transfer is necessary to make this determination.

5.  <u>Whether Rita Gamaldi is an insider of Susanna Gamaldi</u>

The last legal issue for the Court to decide is whether at the time of the $90,000.00 Transfer Rita Gamaldi was an insider of Susanna Gamaldi.  Rita Gamaldi asserts that she was not an insider at the time of the $90,000 Transfer because Susanna Gamaldi and George Gamaldi were estranged at that time, although they were still husband and wife. Pursuant to Bankruptcy Code § 101(31)(A), the term "insider" includes "a relative of the debtor."  11 U.S.C. § 101(31)(A).  The term "relative" is defined as an "individual related by affinity or consanguinity within the third degree as determined by the common law, or an individual in a step or adoptive

relationship within such third degree." 11 U.S.C. §101(45).  As of the date of the $90,000

Transfer, Rita Gamaldi was still the stepmother-in-law of Susanna Gamaldi, despite the strained

relationship between the Debtors. Therefore, Rita Gamaldi was a relative by affinity of Susanna

Gamaldi due to the marriage between Susanna and George Gamaldi.  The relationship between

Susanna Gamaldi and Rita Gamaldi by affinity is as close as the relationship between Rita

Gamaldi and George Gamaldi.  *In re Ribcke,* 64 B.R. 663, 666 (Bankr. D. Md. 1986).  Therefore,

under the doctrine of affinity, George Gamaldi's stepmother would be regarded as Susanna

Gamaldi's stepmother as well, rendering Rita Gamaldi an insider of George and Susanna

Gamaldi.  *In re Winn,* 127 B.R. 697, 699 (Bankr. N.D. Fla. 1991).

### *Conclusion*

Based on the foregoing findings, the Court denies the Trustee's motion for summary

judgment in the First Adversary Proceeding and the Second Adversary Proceeding except for the

finding that Rita Gamaldi is an insider of Susanna Gamaldi for the purposes of both adversary

proceedings.  The Court denies Rita Gamaldi's and George Gamaldi Sr.'s motion for summary

judgment in the First Adversary Proceeding but finds as a matter of law that Susanna Gamaldi's

interest in the Property was not encumbered by the Second Mortgage at any time up to the sale

of the Property. The Court denies Rita Gamaldi's and George Gamaldi Sr's motion for summary

judgment in the Second Adversary Proceeding in its entirety, and finds that a genuine issue of

material fact exists as to whether George Gamaldi received fair consideration for the $45,000.00

transferred by Susanna Gamaldi to Rita Gamaldi pursuant to the Stipulation.

The Court shall hold a trial on all of the remaining issues in the First Adversary

Proceeding and the Second Adversary Proceeding on June 2, 2009 at 10:00 a.m.  The Court shall

enter an order consistent with this Memorandum Decision forthwith.

Dated: Central Islip, New York
          April 7, 2009                              By: */s/ Robert E. Grossman*
                                                     United States Bankruptcy Judge